**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**GERALDINE RHIMES,**

       **Plaintiff,**        **CIVIL ACTION NO. 09-CV-13015**

  vs.

                            **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8, 10) be DENIED, Defendant's Motion For Summary Judgment (docket no. 9) be GRANTED and the instant Complaint DISMISSED.

*** 

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income with a protective filing date of January 6, 2006 alleging that she had been disabled since January 1, 2005 due to feet and knee problems, back problems, high blood pressure and acid reflux[1]. (TR 50-51). The Social Security Administration denied benefits. (TR 27-32). Administrative Law Judge Patricia S. McKay (ALJ) held a hearing on September 11, 2008 and subsequently found that the claimant was not entitled to disability and Disability Insurance

---

[1] At the hearing, Plaintiff agreed to amend the onset date to February 1, 2007, because Plaintiff last worked full-time through January 2007. (TR 228, 230).

Benefits and Supplemental Security Income because she was not under a disability. (TR 11-16). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.    Plaintiff's Testimony

Plaintiff was fifty-three years old at the time of the hearing. (TR 230). Plaintiff testified that she has an eleventh grade education and did not complete a GED. (TR 231-32). Plaintiff lives with her fourteen-year-old daughter in a two-story house. (TR 231, 233, 243). Plaintiff's bedroom and the bathroom are on the second floor and she testified that she spends most of the day upstairs. (TR 80, 243-44).

Plaintiff complained of arthritis, swelling in her feet and ankles and carpal tunnel syndrome that causes numbness in her fingers. (TR 242). Plaintiff is right-handed. (TR 231). Plaintiff testified that she has a hard time lifting a gallon of milk due to arthritis and "stuff" in her shoulders. (TR 233). Plaintiff sits in the house most of the time, watches the morning news and waters her patio plants. (TR 233, 238). Plaintiff testified that she tried to work, but she cannot due to tendinitis in her feet, the inability to stand for a long time and pain throughout her body that resulted in her missing multiple days of work. (TR 83, 233, 258, 263). She stated that her knees feel like there may be fluid on them.

Plaintiff can do some cooking, including making a grilled cheese sandwich. (TR 233). Plaintiff's daughter also helps her around the house with cooking and laundry. (TR 231, 233).

Plaintiff is able to dress herself but frequently wears a robe during the day. (TR 234). Plaintiff sits on a stool to shower and has some difficulty in reaching around when she uses the toilet. She testified that she uses Sprees or scooters to shop and she cannot complete all her shopping in one day. (TR 234). Plaintiff visits with her ten grandchildren at her home and she attends church about twice a month. (TR 235-36). She testified that she is too nervous to drive and she has let her license lapse. (TR 235).

Plaintiff weighed approximately 210 pounds at the time of the hearing and testified that her doctors have advised her to lose weight because it would be easier on her joints. (TR 260). Plaintiff testified that she could sit for about an hour before her back begins to bother her. (TR 239). Plaintiff attended Bible study the evening before the hearing but was only able to stay for one of the two hours due to her back pain. (TR 236). She testified that muscle relaxers provide about sixty percent pain relief. (TR 239). Plaintiff stated that she could not answer how long she can stand because she has to take breaks to sit. (TR 239). Plaintiff testified that she used to use a cane, but lost it at church or K-mart six months prior to the hearing and has not replaced it. Plaintiff testified that she now uses rails to hang onto and walks slowly and she reported that she held onto furniture to walk. (TR 86, 240).

Plaintiff testified that she cannot write for long due to numbness in her fingers. (TR 246). Plaintiff testified that she has not thought about having carpal tunnel surgery and she will do whatever her doctor suggests, but she is afraid to undergo surgery (TR 247). Plaintiff testified that she takes Ultram and Flexeril approximately every six hours and the medications provide some, but not complete pain, relief. (TR 261). She testified that one of the medications causes fatigue for which she lies down for a couple of hours. (TR 261-62). She testified that she cannot sleep

sometimes due to pain, which affects her concentration. (TR 262). She also testified that her concentration improves when her medication reduces her pain. (TR 262-63).

**B.     Medical Evidence**

Plaintiff treated at the Baybrooke Medical Center from 2005 forward, predominately treating with Lawrence J. Cowsill, D.O. (TR 154-75). In August and October 2005 Plaintiff complained of right hand numbness and tingling and bilateral wrist numbness. (TR 169-70). Tinel's and phalen's testing were negative. (TR 169).

Plaintiff reported to the hospital on February 7, 2006 with complaints of chest pain. (TR 106-31). Plaintiff was discharged the following day. (TR 118, 133). An echocardiogram was "borderline" with a slight suggestion of hypokalemia. (TR 122).

Plaintiff was referred to physical therapy by Dr. Cowsill on March 9, 2006. (TR 139). Plaintiff attended physical therapy in March 2006. (TR 134-35). Carol McHugh, physical therapist, noted that Plaintiff was referred to physical therapy following a February 2006 flare-up of right knee pain, which Plaintiff reported injuring years prior, possibly following a fall down stairs. (TR 137). Plaintiff's medications reported in March 2006 were Hydrocodone and Indocin. (TR 137). The therapist noted that Plaintiff reported increased knee pain with standing longer than 40 minutes, ambulating further than half a block and all stair-climbing and difficulty with all household chores. (TR 137). Plaintiff reported decreased symptoms with use of heat, medication and rest and rated her pain as a 3 on a scale of 10. (TR 137). The therapist reported strength at a 4+/5 with right knee extension and 3+/5 with flexion and significant complaints of pain with resisted flexion. (TR 137). The therapist reported on March 14, 2006 that Plaintiff tolerated treatment well and that Plaintiff reported pain rating a 4 on a scale of 10. (TR 135). On March 16, 2006 the therapist noted that

Plaintiff reported pain rating a 2 on a scale of 10. (TR 135). On March 21, 2006 it was noted that Plaintiff reported "0" pain but reported pain and muscle soreness with activities. (TR 134).

On June 10, 2006 Plaintiff underwent a state agency examination with Zafar Shamoon, D.O. (TR 140-43). Dr. Shamoon diagnosed Plaintiff with hypertensive cardiovascular disease with off and on chest pain and blood pressure within normal limits, and osteoarthritis of the back and knees, right worse than left. (TR 142). He reported that Plaintiff has decreased ability to stand, sit and walk, decreased range of motion and paraspinal muscle spasm, increased lumbar lordosis and Plaintiff uses a cane for ambulation. (TR 142). He reported motor strength intact at 5/5, reflexes at 2/4 and symmetrical and no loss of sensation. (TR 142). Grip strength was unimpaired and hands had "full dexterity." (TR 141).

Medical consultant Gordon Harrier completed a Physical Residual Functional Capacity Assessment dated June 24, 2006 and concluded that Plaintiff is limited to lifting and/or carrying twenty pounds occasionally, ten pounds frequently, standing and/or walking about six hours in an eight-hour workday, sitting about six hours in an eight-hour workday, and is unlimited in the ability to push and/or pull consistent with lifting and carrying restrictions. (TR 97-104). The consultant concluded that Plaintiff was limited to occasional climbing of ramps and stairs, kneeling, crouching and crawling and should perform no climbing of ladders, ropes and scaffolds. (TR 99). He noted no manipulative or visual limitations. He concluded that Plaintiff's "ADL's are affected by her physical condition but she is not seeking adequate treatment such as physical therapy and exercise." (TR 102).

A December 2006 CT scan of the abdomen revealed lesions in the liver for which a biopsy was recommended. (TR 152-53, 191-94). A January 2007 ultrasound of the abdomen revealed an "echopenic mass within the posterior cortext of the right kidney, consistent with small renal cortical

cyst." (TR 184-88). In January 2007 Plaintiff underwent a CT scan of the head for complaints of dysequilibrium which revealed the "question of a small low density defect within the left caudate nucleus which if real would suggest developing lacunar infarction" and a follow-up study was recommended. (TR 150-51).

Plaintiff's chief complaints in May through July 2007 were myalgias and arthralgias. (TR 154-58). In May 2007 Dr. Cowsill noted that Plaintiff continued to have polyarthralgia of the axial spine, particularly the low back, and bilateral knees, ankles and feet. (TR 157). Plaintiff had arthritic changes at the first metatarsophalangeal articulation and small calcaneal spur. (TR 157). Plaintiff was also diagnosed with hypertension and being overweight. (TR 157). Plaintiff was taking hydrochlorothiazide, Lopressor, Zantac, Paxil, Adalat, Naproxen and Digoxin. (TR 157-58). On July 9, 2007 Dr. Cowsill reported that Plaintiff complained of diffuse pain and that she cannot work due to the pain. (TR 156). The doctor reported that Plaintiff had no joint swelling, erythema or warmth, was able to ambulate "without difficulty" and mounted and dismounted the examining table without difficulty. (TR 156). Naproxen was discontinued. (TR 156).

In May 2007 Plaintiff was examined by Jeffrey D. Danto, D.P.M., on referral from Dr. Lawrence Cowsill to address he complaints of pain in the right and left heels and ankles. (TR 144). X-rays revealed dorsal lipping at the right first metatarsal head with subchondral sclerosis and the first MPJ and lateral joint narrowing. On the right PCP with pes planus. The doctor discussed conservative treatment of stretching exercises, night splints and injections. Plaintiff refused an injection at the exam. The doctor prescribed Naprosyn and orthotics. (TR 144). An August 2006 adult echo study revealed a mildly dilated left atrium, normal left ventricular function, mild-moderate tricuspid regurgitation, trace mitral regurgitation and mild pulmonary hypertension. (TR 199-200). In July 2007 Plaintiff complained of pain in the back, legs, arms and fingers. (TR

6

176-80). She underwent a bone density study for arthralgia and bone mineral density was determined "to be at a satisfactory amount of mineralization." (TR 145). On July 23, 2007 Plaintiff also underwent an electromyography which revealed carpal tunnel syndrome moderately severe on the right and moderate on the left. (TR 147). No abnormalities were noted in the right leg or lumbar paraspinal. (TR 147). On July 27, 2007 Teresa K. O'Dowd, D.O., M.B.A., examined Plaintiff and reviewed the results of the EMG. (TR 154). Dr. O'Dowd reported that on exam there was no neurologic weakness, syncope or aphagia, the musculoskeletal system was significant for myalgias and arthralgias and there was no clubbing, cyanosis or edema of the extremities. (TR 154-55). In November 2007 the treatment provider noted that Plaintiff reported that she had been doing great with the weather change, she had a new job and she reported back and neck pain and aching hands. (TR 212). A February 2008 dobutamine stress echo test was negative for ischemia. (TR 204).

### C. Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's past work as a nurse's aid was unskilled and medium in exertion, as a baker's helper was unskilled and light in exertion, as a steamer was unskilled and light and factory work as a trimmer was unskilled and light. (TR 266). The ALJ asked the VE to consider an individual of Plaintiff's age, education and past work experience with the residual functional capacity to perform the full range of light work by with additional limitations to only occasional climbing, balancing, stooping, crouching, kneeling and crawling and providing a sit/stand option. (TR 266). The VE testified that such an individual would not be able to perform Plaintiff's past relevant work. (TR 266). The VE testified that such an individual could perform jobs including unskilled, light exertion bench assembly (4,200 jobs available in the region), sorter (2,300 jobs) and packer (2,000). (TR 267). The VE testified that the number of jobs would be doubled for the state. The VE testified that an individual further limited to simple routine tasks

requiring limited concentration could perform these jobs. (TR 267). A limitation to a required six hours of sitting with a sit/stand option would not impact these jobs. (TR 267).

The ALJ asked whether Plaintiff's reported numbness in her fingers would affect the availability of these jobs. (TR 268). The VE testified that an individual in these jobs would need to use their fingers repetitively, with more gross manipulation (the ability to pick up objects that are "not real tiny" and grip and grasp objects larger than two inches) than fine manipulation. (TR 268). A limitation in fine manipulation would not impact the job numbers. (TR 269). The VE also testified to a number of jobs that could be performed at the sedentary level with these limitations, but that require some occasional fine manipulation, such as the occasional use of a pen or the ability to dial a telephone, but nothing constant or repetitive. (TR 270). The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT) except where the DOT is silent as to the sit/stand option, which is based on the VE's work in the region. (TR 272).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through the date of the decision, had not engaged in substantial gainful activity since her amended alleged onset date of February 1, 2007 and suffers from bilateral carpal tunnel syndrome and polyarthralgias, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 13-14). The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not totally credible and although Plaintiff could not perform her past work, she has the ability to perform a limited range of light exertion work and there are jobs that exist in significant numbers in the economy which Plaintiff can perform. (TR 14-16). Therefore she was not suffering from a disability under the Social Security Act from February 1, 2007 through the date of the ALJ's decision. (TR 16).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ's RFC did not include manipulative limitations related to her bilateral carpal tunnel syndrome. (Docket no. 8 at 14 of 17).

**C.     Analysis**: **Whether The ALJ's RFC Is Supported By Substantial Evidence**

Plaintiff argues that the ALJ failed to include limitations related to her bilateral carpal tunnel syndrome in the RFC. Plaintiff points to the results of a July 23, 2007 electromyography study (EMG) which resulted in the diagnosis of "moderately severe" right carpal tunnel syndrome and

"moderate" left carpal tunnel syndrome. (TR 176). Plaintiff argues that the EMG objectively substantiates her testimony regarding numbness in her fingers and difficulty writing. (TR 242, 246).

In assessing a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The regulations define a "severe" impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

"At step two 'significant' is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, 'unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.'" *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). "Under a Social Security policy ruling, if an impairment has 'more than a minimal effect' on the claimant's ability to do basic work activities, the ALJ is required to treat it as 'severe.'" *Griffeth*, 217 F. App'x at 428 (citing SSR 96-3p (July 2, 1996)). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Id.* at 429 (citing *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D.Mich. July 14, 2004)). The ALJ concluded that Plaintiff's bilateral carpal tunnel syndrome is a severe impairment, although it does not meet the listing of impairments on its own or in combination with Plaintiff's other impairment. (TR 13, 14). The finding that bilateral carpal tunnel syndrome is one of Plaintiff's severe impairments does not automatically establish related limitations.

The ALJ found that Plaintiff has the ability to perform light exertional work with a sit/stand option limited to occasional climbing, balancing, stooping, crouching, crawling and kneeling. (TR

14). The ALJ's decision shows that she considered the July 23, 2007 EMG results. (TR 14). The ALJ cited the EMG results and noted that the EMG revealed no evidence of lower extremity radiculopathy. (TR 14). The ALJ concluded that although Plaintiff's "[b]ilateral carpal tunnel syndrome is objectively corroborated, . . . her complaints are vague and nonspecific and the record does not document subsequent treatment or impaired grip strength or dexterity." (TR 14).

The ALJ's findings are supported by substantial evidence in the record. Other than the EMG results, Plaintiff has not identified records showing subsequent treatment for the carpal tunnel syndrome, limitations or impairments on examination. The state agency medical consultant concluded on June 24, 2006 that Plaintiff had no manipulative limitations. (TR 100). At Plaintiff's examination in June 2006, Dr. Shamoor reported that Plaintiff's "[g]rip strength is unimpaired" and "hands have full dexterity." (TR 141). No neurologic weakness was identified at the July 27, 2007 examination. (TR 154). The ALJ's RFC was supported by substantial evidence even where it did not contain manipulative limitations.

In a hypothetical question posed to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Plaintiff has not challenged the ALJ's credibility determination on appeal other than to argue that the July 2007 EMG testing supports Plaintiff's testimony that she has numbness in her fingers and has difficulty writing. As the ALJ pointed out, Plaintiff's testimony regarding her carpal tunnel syndrome symptoms was vague and nonspecific. Plaintiff also testified that she has not considered carpal tunnel surgery and the record does not show any recommendations for treatment. (TR 246). Plaintiff has pointed to no other specific allegations which should have been incorporated into the RFC and hypothetical question to the VE.

As set forth above, the ALJ did not find that the record supported limitations related to the carpal tunnel syndrome. Even if the ALJ had accepted in full Plaintiff's general allegation that she can write for only a short period of time, the jobs to which the VE testified require the repetitive use of fingers for gross manipulation, not fine manipulation. (TR 246). The VE further testified that fine manipulation was more relevant to sedentary level jobs, such as a requirement to occasionally use a pen to make a note, or dial a telephone. (TR 269-70). Plaintiff has not identified evidence to suggest that she cannot perform gross manipulation, including her own testimony. The ALJ's RFC is supported by substantial evidence and it was provided to the VE in the form of a hypothetical question. The ALJ properly relied on the VE's testimony. The ALJ's decision at step five that there are a substantial number of jobs in economy which Plaintiff can perform is supported by substantial evidence.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407 at *2 (6th Cir. 1987). The ALJ's decision was supported by substantial evidence in the record and her findings were articulated in her decision.

## VI.  CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 8, 10) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 9) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 7, 2010  s/ Mona K. Majzoub  
MONA K. MAJZOUB  
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

14

Dated: July 7, 2010          s/ Lisa C. Bartlett
                             Case Manager